UNITED STATES DISTRICT COURT
WESTERN DISTRCT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00004-TBR

**FELIX VALDES**                                                                                                **PLAINTIFF**

**V.**

**DR. LEE A. EVANS,** *et al.*                                                               **DEFENDANTS**

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon a motion by Defendants, Dr. Lee A. Evans and Dr. Gerame Wells, for summary judgment. (DN 13). Defendant Lindsey Harper is not a party to this motion. Plaintiff, Felix Valdes, has responded (DN 18) and the Defendants have filed a reply (DN 19). Fully briefed, this matter is ripe for review and for the following reasons, the Defendants' motion for summary judgment (DN 13) is **GRANTED**.

### Background

Plaintiff is an inmate currently incarcerated at Lee Adjustment Center. The events giving rise to this action occurred while Plaintiff was incarcerated at Christian County Jail (CCJ). Plaintiff states that on November 27, 2017, he was admitted to the Jennie Stuart Medical Center "due to a hernia surgery appointment by Dr. Lee A. Evans and Dr. Wells." Plaintiff states, "I was cut open 6 inches down in-between the left side of my pelvis for this hernia surgery and also had my right tendon of my inner thigh cut while having my right testicle removed improperly be Dr. Wells. I found these things out after surgery."

According to the complaint, Plaintiff returned to CCJ later that afternoon and was put in a detox cell where he had to sleep on the floor on a two-inch mat until the next day. Plaintiff claims, "Sgt Moore witnessed my dilemma after my cries of pain and a guard in booking called for help.

He gave me two thicker mats, extra blankets and sheet after helping me to the restroom." Plaintiff states that he was then ordered to be moved to another cell. He asserts, "I was lied to that I was going to a medical cell but ended up in segregation in cell 921C where I stayed a week."

Plaintiff alleges that, after the surgery, he "underwent pains in [his] lower body (groin, pelvis, thighs) but wasn't giving any prescribed medicine, instead two days of ibuprofen off an on." He asserts that after that week he was moved again, and further states:

> Since that detrimental surgery at Jennie Stuarts I've endured a year and two months of critical pains in my lower body which prohibits me from sleeping regularly, walking upright entirely and being as active as I once was. Now I'm facing life long injuries and damages from the negligence of Dr. Evans and Dr. Well, and at [CCJ], nurse Lindsey who constantly refused me of my proper medication. So I suffered throughout the year. I've seen her multiple times but still no relief to my please.

Plaintiff reports that on December 17, 2018, Defendant Harper gave him a two-page "legal document" to sign labeled "Patient Privacy Notification Form." He states that he was informed that it was a document concerning his doctor's appointment and that he needed to sign it. Plaintiff states that he does not read English and that the form should have been provided to him in Spanish. The form allegedly stated that a signature was not required. Plaintiff alleges "I've been lied to and because of surgeon error, I may need another painful surgery, and I fear another removal of my other testicle. I'm distressed its happening and seek legal justice."

Plaintiff states that he was told that Defendant Wells would reschedule an appointment but he has not received a date. He states "I've been misled and taken advantage of in this situation because of my lack of English comprehension but I am an American citizen." He states further that "I haven't been recommended anything from the nurses when file and visit sick call, only gotten refusals and lies that there's only one doctor in town and that Dr. Lee A. Evans wish to never see me again, not even for check-ups." Defendant Dr. Evans testifies in his affidavit that he,

in fact, did have a follow-up appointment with the Plaintiff. Dr. Evans attests that "[o]n December 19, 2018, Felix Valdes presented to the Urology Department for new reports of left, nonpainful scrotal swelling and pain along the right upper scrotum. I diagnosed Felix Valdes with a new small, left spermatocele currently asymptomatic and recommended further observation." (DN 13-2).

Plaintiff reports that he also needs to see a doctor "for the pigmentation change of my skin due to the bruising and contusions cause by these doctors malpractice and inhumanity." Plaintiff alleges that "Overall, I have consisting pains from pelvis to downward inner thighs and bruises that reach my ankle. I have non-stop itching that accompanies the pains, bringing me mental and emotional distress. There's no relief an nothing's being properly assessed to this day."

This Court conducted an initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (DN 6). Upon review, the Court explained:

> Based on the allegations, the Court will construe the complaint as alleging an Eighth Amendment claim of deliberate indifference to Plaintiff's serious needs against Defendant Harper in her individual capacity and state-law medical malpractice claims against Defendants Harper, Evans, and Wells. Upon consideration, the Court will allow these claims to proceed for further development.

(DN 6 at 7-8). Dr. Evans and Dr. Wells now move the Court for summary judgment regarding the medical malpractice claims against them. The Defendants argue, *inter alia*, that Plaintiff's medical malpractice claims against them are barred by the statute of limitations. The Court agrees. Because the Plaintiff's medical malpractice claims against Dr. Evans and Dr. Wells are barred by the one-year statute of limitations under Kentucky law, Defendants' motion for summary judgment (DN 13) is **GRANTED.** And because the medical malpractice claims are the only claims against Dr. Evans and Dr. Wells, they are hereby terminated from this action.

**Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. See *id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996).

**Discussion**

Under Kentucky law, an action against a physician, surgeon, dentist, or hospital for negligence or malpractice must be commenced within one year after the cause of action accrued. KY. REV. STAT. ANN. § 413.140(1)(e). Such an "action shall be deemed to accrue at the time the

injury is first discovered or in the exercise of reasonable care should have been discovered." KY. REV. STAT. ANN. § 413.140(2). The Sixth Circuit Court of Appeals explained this rule as follows:

> "[T]he statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (citation omitted). The plaintiff must have a "basis for a claim before the statute of limitations begins to run." *Id.* The "knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and (2) by whom the wrong has been committed." *Id.* Although what the plaintiff actually knew often triggers discovery, the rule can also be satisfied by what the plaintiff should have known. *Id.*; *see also Davis v. All Care Medical, Inc.*, 986 S.W.2d 902, 906 (Ky. 1999) (noting in dicta that the discovery rule "uses a reasonably prudent person test"). In constructing knowledge, however, a court must give special consideration to the patient's perspective because "[o]ne who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician." *Wiseman*, 37 S.W.3d at 712-13.

*Elam v. Menzies*, 594 F.3d 463, 466 (6th Cir. 2010).

In this case, the Plaintiff discovered his alleged injury on November, 27, 2017. In his Complaint, Plaintiff states:

> On November 27th, 2017 8:30 am, I was admitted into Jennie Stuarts Medical Center due to hernia surgery appointment by Dr. Lee A. Evans and Dr. Wells. I was cut open 6 inches down in-between the left side of my pelvis for this hernia surgery and also had my right tendon of my inner thigh cut while having my right testicle removed improperly by Dr. Wells. *I found these things out after the surgery*.

(DN 1-1 at 1) (emphasis added). Plaintiff filed his Complaint and thereby commenced this action on January 10, 2019. Therefore, Plaintiff's medical malpractice claims against Dr. Evans and Dr. Wells were not commenced within the statutory period and are barred. The Defendants are entitled to judgment as a matter of law.

The Plaintiff's argument that his claim is saved by the "continuing wrong" rule is unpersuasive. Plaintiff argues that Dr. Evans and Dr. Wells failed to treat him after the surgery. Therefore, Plaintiff argues, some of the Defendants' negligence and malpractice was committed

5

within the statutory period and he is able to recover for the whole course of conduct even though the surgery started outside the limitation period. Plaintiff acknowledges that "[t]he continuing wrong rule is applicable to continuing wrongful action, *not* to continuing injury accruing from an earlier wrong." (DN 18-1 at 2). But Plaintiff argues that "when the basis of the complaint is an ongoing failure to treat an ongoing harm, the continuing wrong rule may be applicable." *Id.* Plaintiff claims that "[t]his was not just a simple matter of not agreeing to treat Plaintiff, but refusing to follow up a patient Defendants had surgerized and who had complaints directly associated therewith. The physician-patient relationship was established by virtue of the Defendants providing treatment, which obligation and responsibility remains with Defendants until Plaintiff has fully recovered from their treatment. (DN 18-1 at 4).

Defendants correctly identify, however, that neither Dr. Evans nor Dr. Wells owed the Plaintiff a duty of care after he was returned into the custody of CCJ in a stable and nonemergent condition. There is no evidence that Plaintiff requested a follow-up appointment with either of these doctors or that either doctor refused to treat Plaintiff. Defendants explain that "Plaintiff alleges that Nurse Harper told him 'lies' that 'Dr. Lee H. Evans wish to never see me again, not even for check-ups.' . . . The use of the word 'lies' implies that Plaintiff believes Dr. Evans did not in fact refuse Plaintiff treatment." (DN 19 at 5). Defendants further explain: "Plaintiff alleges that 'I was told that Dr. Wells would reschedule an appointment but have yet gotten a date.' . . . Plaintiff does not indicate that he requested a date for a follow-up appointment with Dr. Wells and that Dr. Wells denied said appointment, but merely that Dr. Wells did not schedule a follow-up appointment." *Id.* at 4. The doctor-patient relationship between Plaintiff and Defendants was terminated when Plaintiff was placed into the care of CCJ in a stable and nonemergent condition. Once this relationship was terminated, Defendants no longer owed Plaintiff a duty to provide

6

treatment for his nonemergent condition. *See Noble v. Satori*, 799 S.W.2d 8, 9-10 (Ky. 2003); *Jenkins v. Best*, 250 S.W.3d 680, 692 (Ky. Ct. App. 2007) ("we do not read *Noble* as doing away with the necessity of a legally cognizable relationship between the patient and the physician as a prerequisite to the finding that a duty existed."). Plaintiff's arguments are further belied by Dr. Evans' testimony that he did, in fact, see Plaintiff as a patient again on December 19, 2018. Dr. Evans attests that "[o]n December 19, 2018, Felix Valdes presented to the Urology Department for new reports of left, nonpainful scrotal swelling and pain along the right upper scrotum. I diagnosed Felix Valdes with a new small, left spermatocele currently asymptomatic and recommended further observation." (DN 13-2). Because the doctor-patient relationship was terminated and because there is no evidence that Dr. Wells or Dr. Evans denied Plaintiff treatment, Plaintiff's continuing wrong argument fails.

Even if Plaintiff's claims were not barred by the statute of limitations, the Defendants would be entitled to summary judgment because Plaintiff has not established the applicable standard of care and breach thereof. Defendants argue that "[f]or medical malpractice claims raised under Kentucky law, expert testimony is required to show that a medical provider failed to conform to the standard of care." *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992); *Green v. Owensboro Med. Health Sys. Inc.*, 231 S.W.3d 781, 783 (Ky. App. 2007).

Generally, expert medical testimony is required to prove a medical malpractice claim. But this issue is largely left to the Court's discretion and there are exceptions where it may be appropriate to allow an action to proceed absent expert testimony. The Kentucky Court of Appeals explained:

> Generally, liability for medical negligence requires expert medical testimony establishing the applicable standard of care and the breach thereof. However, there are two circumstances in which negligence may be inferred without expert medical

testimony. The first is where the negligence and injurious results are "so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965) (citations omitted); *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963). *See also Perkins v. Hausladen*, 828 S.W.2d 652, 655, 39 4 Ky. L. Summary 48 (Ky. 1992); *Baptist Healthcare Systems, Inc., Supra*, at 680. The second is where other medical testimony provides an adequate "foundation for *res ipsa loquitur* on more complex matters." *Perkins*, *supra* at 655 (quoting Prosser and Keeton on Torts, Sec. 39 (5th ed. 1984)).

*Green v. Owensboro Med. Health Sys.*, 231 S.W.3d 781, 783-84 (Ky. Ct. App. Aug. 10, 2007).

This case does not fall within either exception. First, the alleged negligence and injuries are not so apparent that laymen with general knowledge would have no difficulty in recognizing it. Plaintiff claims that his right tendon of his inner thigh was cut during a hernia surgery involving an incision six inches down in between the left side of his pelvis and that his right testicle was not properly removed. This Court is uneducated on the details of the procedure at issue or whether the tendon at issue may be cut absent a surgeon's negligence. And because the Plaintiff has not provided any medical testimony, the second exception does not apply to the facts at hand.

Plaintiff responds that he cannot afford an expert and requests the Court to provide him one. Plaintiff is not entitled to a court-appointed expert. In a previous decision, this Court explained:

> To the extent that Plaintiff appears to be asking for the appointment of a medical expert to assist in the development of his case, the Court will deny that request as well. First, Plaintiff, who is proceeding *in forma pauperis*, is not entitled to the appointment of an expert witness at court expense. The expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress. *See Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989). The plain language of 28 U.S.C. § 1915, the *in forma pauperis* statute, does not authorize a district court to waive fees or expenses paid to witnesses. *See id.* at 211-12. Federal Rule of Evidence 706(a) does authorize the district court to appoint an expert to aid the court. *See Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008) (affirming district court's refusal to appoint expert witness for *pro se* prisoner alleging inadequate medical care; *see also Walker v. American Home Shield Long Term Disability Plain*, 180 F.3d 1065, 1071 (9th Cir. 1999) (upholding district court's decision to appoint independent expert to assist in evaluating "confusing and conflicting" evidence regarding fibromyalgia). At present, the Court is not in need of expert

assistance. Should such a need arise in the future, the Court *sua sponte* will order the parties to show cause why an expert witness should not be appointed. *See* Fed. R. Civ. P. 706(a).

*Brown v. Kentucky State Penitentiary*, No. 5:10-cv-P188-R, 2011 WL 1403201, at *2 (W.D. Ky. Apr. 13, 2011). And in a more recent case, the district court for the northern district of Ohio explained:

> Federal Rule of Evidence 706(a) permits the appointment of an expert to aid the courts, but does not authorize the district court to provide a plaintiff with funds for an expert witness or to appoint such a witness on a plaintiff's behalf. *See Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008) (affirming district court's refusal to appoint expert witness for *pro se* prisoner alleging inadequate medical care). While the undersigned sympathizes with Plaintiff's financial situation, the purpose of a court-appointed expert is to assist the trier of fact, not to serve as an advocate. *Students of Cal. School for the Blind v. Honig*, 736 F.2d 538, 549 (9th Cir.1984) (citing Fed. R. Evid. 706), *vacated on other grounds*, 471 U.S. 148, 105 S. Ct. 1820, 85 L. Ed. 2d 114 (1985).

*Wagner v. Turner*, No. 3:16 CV 2046, 2018 U.S. Dist. LEXIS 118076, *10-11(S.D. Ohio May 25, 2018).

To prove his case, Plaintiff must provide expert testimony establishing the applicable standard of care and breach thereof. Plaintiff has failed to provide any expert testimony. Furthermore, Plaintiff has made clear that he will be unable to acquire expert testimony in this case. Plaintiff is not entitled to the appointment of an expert witness at Court expense. Therefore, the Defendants would be entitled to summary judgment even if Plaintiff's claims were not barred by the statute of limitations as discussed above.

**Order**

For the foregoing reasons, **IT IS HEREBY ORDERED**, Defendants' motion for summary judgment (DN 13) is **GRANTED.** All claims against Dr. Lee A. Evans and Dr. Gerame Wells are **DISMISSED.** There being no claims remaining against Dr. Lee A. Evans and Dr. Gerame Wells,

they are **TERMINATED** from this action. This is a final and appealable order. **IT IS SO ORDERED.**

*Thomas B. Russell*
**Thomas B. Russell, Senior Judge**
**United States District Court**

December 4, 2019

CC:    Felix Valdes
         301813
         Lee Adjustment Center
         Inmate Mail
         168 Lee Adjustment Center Drive
         Beatyville, KY 41311
CC:    Counsel of Record.